HOLLY E. ESTES, ESQ.
Nevada Bar No. 11797
ESTES LAW, P.C.
605 Forest Street
Reno, Nevada 89509
Telephone (775) 321-1333
Facsimile (775) 321-1314
***Email: hestes@esteslawpc.com***

Attorney for Jonathan W. Smee

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

—ooOoo—

| | |
|---|---|
| In Re: | Case No. 24-51277-HLB <br> Chapter 11 |
| MANZANITA LANE, LLC, | **OBJECTION TO AMENDED OMNIBUS MOTION FOR ORDER AUTHORIZING: (1) ASSUMPTION OF REAL ESTATE PURCHASE AND SALE AGREEMENTS; (2) EMPLOYMENT OF PROPERTY SALE BROKER UNDER 11 U.S.C. § 327(a); (3) SALE OF REAL PROPERTIES FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES [2500 MERAKI PLACE, RENO, NEVADA AND 2537 MERAKI PLACE, RENO, NEVADA]; AND (4) PAYMENT OF STATUTORY LIENS, SALES COMMISSIONS, AND CLOSING COSTS** |
| Debtor. | |
| _____/ | Cont Hearing Date: February 5, 2025 <br> Hearing Time: 2:30 p.m. |

Jonathan W. Smee ("Mr. Smee"), by and through its counsel, Holly E. Estes, Esq., of Estes Law, P.C., hereby files his opposition to the Debtor's Amended Omnibus Motion for Order Authorizing: (1) Assumption of Real Estate Purchase Agreements; (2) Employment of Property Sale Broker Under 11 U.S.C. § 327(a); (3) Sale of Real Properties Free and Clear of Liens, Claims and Encumbrances [2500 Meraki Place, Reno, Nevada]; and (4) Payment of Statutory Liens, Sales Commissions and Closing Costs [DE 19] (the

1  "Motion"). This opposition is based up on the following Memorandum of Points and
2  Authorities, the Declaration of Jonathan W. Smee filed in support hereof, and the
3  arguments presented at the continued hearing on the Motion.

4  **MEMORANDUM OF POINTS AND AUTHORITIES**

5  Smee objects to the employment and payment of Ferrari Lund, the assumption of
6  the Ambrose PSA, and the sale of the 2500 Meraki Place property. Smee is due a deposit
7  in the amount of $85,000 from the Debtor. Smee believes he has a claim as to the design
8  deposits made by Ambrose to the Debtor and further believes he has claims to refund of
9  his deposit should the Ambrose PSA close escrow, pursuant to the Termination
10 Agreement entered into between the Debtor and Smee. Smee further believes he may
11 have claims against Ferrari Lund, as it was also a signatory to the Termination
12 Agreement. Smee requests that this court continue the hearing on the Motion to allow
13 him to conduct further discovery regarding his claims against the Debtor, Ferrari Lund,
14 and his claims to the design deposits made by Ambrose to the Debtor and any proceeds
15 from the close of escrow on a sale of the 2500 Meraki Place property to Ambrose. If the
16 Court is inclined to approve the sale, Smee request that the Court set $85,000 of the
17 purchase money aside for future determination of the Court as to who is entitled to the
18 money, with Smee preserving all rights and claims thereto.

19 **A. Factual Background.**

20  1. The Motion provides that the Debtor entered into a purchase agreement
21 with the Kenneth Ambrose and Regina Ambrose, as Trustees of The Kenneth and Regina
22 Ambrose Family Trust ("**Ambrose**") with regard to the real property located at 2500
23 Meraki Place, Reno, Nevada 89509, APN: 224-151-02 (the "2500 Meraki Property") on
24 June 7, 2023, which is attached to the Motion as **Exhibit "A"** (the Ambrose PSA).

25  2. The Motion further states that the Ambrose PSA was amended by a Final
26 Addendum dated August 29, 2024, but the Final Addendum does not appear anywhere in
27 the documents filed in support of the Motion.

28  3. The Motion provides that as part of the Ambrose PSA, Ambrose provided a

1  $50,000 earnest money deposit into escrow and paid additional deposits of $340,938.76
2  directly to the Debtor on account of anticipated upgrades for the 2500 Meraki Property,
3  which upgrades have said to now have been completed.
4      4.    The Motion, seeks authorization to assume the prepetition Ambrose PSA
5  pursuant to 11 U.S.C. § 365 as an unexpired executory contract. By its Motion, the Debtor
6  also seeks authorization to sell the 2500 Property to Ambrose free and clear of liens,
7  claims, and encumbrances under 11 U.S.C. §§ 363(b) and (f).
8      5.    The Motion also seeks authorization to employ its 1/3 member as real estate
9  broker for the transaction under 11 U.S.C. § 327(a) and further seeks authorization to pay
10 its 1/3 member a sales commissions from escrow upon closing.
11     6.    Finally, the Motion seeks findings from this Court that Ambrose is a
12 good faith purchasers entitled to the safe harbor protections of 11 U.S.C. § 363(m) and
13 that the fourteen-day stay imposed by Fed. R. Bankr. P. 6004(h) is waived so that the
14 sales can close as soon as practicable after an order is entered by the Court approving this
15 Motion.
16 **Facts Regarding Mr. Smee.**
17     7.    On or around March 23, 2021 Manzanita Lane, LLC (the "Debtor") and Mr.
18 Smee entered into a Real Estate Home Purchase Agreement and Joint Escrow Instructions
19 and Addendum A for the purchase of the 2500 Meraki Property (the "Smee PSA"). *See*
20 Declaration of Jonathan Smee, **Exhibit "A"**.
21     8.    As part of the Smee PSA, Mr. Smee paid a $100,000 earnest money deposit,
22 and an additional design deposit in the amount of $85,000. *See* Declaration of Jonathan
23 Smee.
24     9.    At the time of the Smee PSA, 2500 Meraki Property was a dirt lot. *Id.*
25     10.    On or around August 23, 2022, the Debtor and Mr. Smee entered into a
26 Termination of Contract and Cancellation Instructions (the "Termination Agreement").
27 *See* Declaration of Jonathan Smee, **Exhibit "B"**.
28     11.    At the time of the Termination Agreement the Debtor had not performed

1  any work for the design deposit. *See* Declaration of Jonathan Smee.

2    12.    In addition to the Debtor and Mr. Smee being signatories to the Termination
3  Agreement, Inez Cobb signing as "seller's agent" and Mr. Smee's agent were also
4  signatories.

5    13.    Pursuant to the Termination Agreement, Mr. Smee was to have his
6  $100,000 deposit returned immediately and his $85,000 design deposit returned when (a)
7  a new buyer entered into contact to acquire the 2500 Meraki Property and agreed to fund
8  their own architectural and design changes in an amount to exceed $85,000, or (b) the
9  successful close of escrow of *a to be completed home* at the subject property, whichever
10 was sooner.

11    14.    Following execution of the Termination Agreement, the Debtor's manager
12 and member Ronald Cobb represented to Mr. Smee at all times that his design deposit
13 would be returned by the Debtor. Attached to the Smee Declaration as **Exhibit "C"** is an
14 email Mr. Smee received from Ronald Cobb, the Debtor's member and manager on
15 September 16, 2022 assuring him that his design deposit would be returned consistent
16 with the Termination Agreement.

17    15.    Pursuant to the Debtor's Motion, the Debtor has entered into a purchase
18 contract with a new buyer for the 2500 Meraki Property, and that new buyer has agreed to
19 design changes on the 2500 Meraki Property in the amount of $340,938.76, thus
20 triggering the required return of Mr. Smee's design deposit.

21    16.    Mr. Smee has not received the return of his $85,000 design deposit from the
22 Debtor, and his design deposit is still due and outstanding.

23    17.    The Debtor's schedules list Mr. Smee as due "Monies Owed from Earnest
24 Money Deposit" in the amount of $85,000. [DE 14, pgs. 2 and 10].

25 ///
26 ///
27 ///
28 ///

**B.    LEGAL ARGUMENT**

    1.    **Mr. Smee Is Due a Deposit from the Debtor and Believes the Debtor Holds Money in Constructive Trust for the Benefit of Mr. Smee.**

As set forth above Mr. Smee entered into a PSA with the Debtor which was subsequently terminated pursuant to the Termination Agreement. The Termination Agreement provided that Mr. Smee would receive return of his design deposit in the amount of $85,000 when a new buyer came forth and agreed to acquire the 2500 Meraki Property with design changes in excess of the $85,000 he deposited, or the close of escrow, which ever occurred first. Here, the Debtor entered into the Ambrose PSA, and Ambrose agreed to design changes in the amount of $340,938.76, well in excess of the $85,000 deposit made by Mr. Smee.

Section 541(d) clarifies Section 541(a)(1) by expressly providing that any such interest held by the debtor at the commencement of the case becomes estate property under subsection (a)(1) or (2), but only to the extent of the debtor's legal title to the property, not including any equitable interest in the property held by the debtor.

Mr. Smee asserts that the Debtor is holding either his deposit or the design deposit received by Ambrose in constructive trust for his benefit, and that said deposits are not property of the estate pursuant to Section 541(d). It is a "well settled principle that debtors do not own an equitable interest in property … [they] hold … in trust for another, and that therefore funds held in trust are not property of the estate." *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95 (3d Cir. 1994) (*quoting Begier v. IRS*, 496 U.S. 53, 110 S. Ct. 2258, 110 L. Ed. 2d 46, 22 C.B.C.2d 1080 (1990)).

Mr. Smee will need to conduct discovery regarding the transaction between the Debtor and Ambrose to fully assert his constructive trust claim, and other claims he has. Accordingly, Mr. Smee requests a continuation of this Motion in order for him to conduct necessary discovery.

///

///

2.     **The Debtor Has Not Established That It Has Met The "Business Judgement Test" to Assume the Ambrose PSA**.

The Debtor's Motion states that the standard for determining whether the Debtor can assume the Ambrose PSA is the "business judgement test". Motion, 7:21. In the Motion, the Debtor conflates what its business judgement was pre-petition with what its business judgement is post-petition. The Motion provides that the Debtor entered into the Ambrose PSA, and collected $340,938.76 in design deposits from Ambrose. The Debtor has not established where the Ambrose PSA design deposits are currently, and what the rejection of the Ambrose PSA might mean for the estate. Mr. Smee requires time to conduct discovery regarding the Ambrose design deposits and whether assumption of the contract is the best interest of creditors and the estate.

Depending on what the discovery uncovers, the Debtor may have a history of failure to maintain deposits, and a motion to appoint a trustee would be appropriate. In that case, the Trustee should make the decision as to what is in the estate's best business judgment.

3.     **The Real Estate Broker Is Not Disinterested And Cannot be Employed.**

The Debtor is seeking to employ Ferrari Lund as the real estate broker and Inez Cobb as the real estate agent for any marketing or sale of the 2500 Meraki Property. As the Debtor notes in the Motion, Inez Cobb is the wife of the Debtor's former manager Ronald Cobb. Ronald Cobb and Inez Cobb are also principals of Cobb L.L.C. which owns 66.67% membership interest in the Debtor.

11 U.S.C. §327(a) states: "Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."

///

///

11 U.S.C. §101(14) defines the term "disinterested person" as:

a person that—

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

Mrs. Cobb is a member of the 66.67% equity security holder in the Debtor -Cobb L.L.C. Cobb L.L.C. is an affiliate of the Debtor under 11 U.S.C. 101(2)(A). Mrs. Cobb is an insider of the Debtor as defined is Section 101(31)(E). Mrs. Cobb is believed to have a direct or community property interest in a creditor of the Debtor, West Star Builders, LLC, which is owed $548,711.61 [Debtor's Schedules DE 14, pg 10]. Cobb L.L.C. is also a co-debtor of the Debtor, and Mrs. Cobb's husband Ronald Cobb is a co-debtor of the Debtor. Because Mrs. Cobb is an insider the Court has no power to authorize her retention under Section 327(a). See Childress v. Middleton Arms, L.P. (In re Middleton Arms, L.P.), 934 F.2d 723 (6th Cir. 1991) (court has no power to authorize retention of insider as real estate agent). Further, as a creditor, member of a co-debtor, spouse of a co-debtor, and interest holder in a creditor of the Debtor she holds interest adverse to Mr. Smee, and cannot be retained.

Mr. Smee and Ambrose may also have claims against Ferrari Lund. As set forth above, Inez Cobb was also a signatory to the Termination Agreement entered into between Mr. Smee and the Debtor. Mr. Smee requires discovery to determine what Ferrari Lund and Inez Cobb knew at the time of signing the Termination Agreement and thereafter, including whether they disclosed the Termination Agreement, and the Debtor's obligations thereunder to Ambrose, and what Ferrari Lund and Inez Cobb knew about any deposits being paid by Ambrose to the Debtor, and not remitted to Mr. Smee under the Termination Agreement.

///

1  For the reasons set forth above, Mr. Smee objects to the employment and payment
2  of Ferrari Lund and Mrs. Cobb.

### CONCLUSION

4  WHEREFORE, based upon the above, Mr. Smee requests that the hearing on the
5  Motion be continued to allow Mr. Smee to conduct discovery, and file supplemental
6  briefing in response to the relief requested by the Debtor.  Further, Mr. Smee requests at
7  the very least that if this Court is inclined to grant the relief requested in the Motion, that
8  the Court set aside $85,000 from the close of the Ambrose PSA with reservation of all
9  parties rights thereto for future determination by the Court.

10  **DATED** this 5th day of February, 2025.

12                                    ESTES LAW, P.C.

14                                    By:       /s/ Holly E. Estes
15                                    HOLLY E. ESTES, ESQ.
16                                    Counsel for Jonathan W. Smee

ESTES LAW, P.C.
605 Forest Street
Reno, Nevada  89509
(775) 321-1333

F:\Estes Law Backup 041422\Smee, Jon\Mot Sell, Emp RE Broker, Pay\Smee Opp Amd Omnibus Mtn 020325.wpd

8

## **CERTIFICATE OF SERVICE**

I, Holly E. Estes, Esq., hereby certify that on the 5th day of February, 2025, the foregoing document was served on all parties consenting to electronic service in this case via the Court's CM/ECF system of the Bankruptcy Court.

/s/ Holly E. Estes

_____

HOLLY E. ESTES